UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
UNITED STATES OF AMERICA,

**MEMORANDUM & ORDER**

    -v -

15-CR-80 (S-2) (ILG)

ALVAUN THOMPSON,

        Defendant.
-----------------------------------------------x

GLASSER, Senior United States District Judge:

    A second superseding indictment charges Defendant in Count One with sex trafficking a child under the age of 14, in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(1); in Counts Two and Three with sex trafficking a child under the age of 18, in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(1), (b)(2); in Count Four with promoting prostitution, in violation of the Travel Act, 18 U.S.C. § 1952(a)(3)(A); in Count Five with sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a), (e); in Count Six with possessing child pornography, in violation of § 2252(a)(4)(B), (b)(2); in Counts Seven and Ten with the illicit transportation of a minor, in violation of 18 U.S.C. § 2423(a); in Counts Eight and Eleven with transporting persons in interstate commerce for the purpose of prostitution, in violation of 18 U.S.C. § 2421; and in Counts Nine and Twelve with interstate prostitution, in violation of 18 U.S.C. § 2422(a). Dkt. No. 35.

    Defendant moves (1) to dismiss Counts Four and Seven through Twelve for running afoul of Rule 7(c) of the Federal Rules of Criminal Procedure; (2) to dismiss Counts One through Three on the ground that the charging statute, 18 U.S.C. § 1591, is unconstitutionally overbroad; (3) alternatively, to dismiss those counts for charging scienter insufficiently; (4) for a bill of particulars; and (5) to strike surplusage from the indictment. See Defendant's Memorandum of Law in Support of His Motion to Dismiss,

Dkt. No. 33 ("Def. Mem."); Defendant's Supplemental Motion to Dismiss, Dkt. No. 41 ("Def. Supp.").

Each claim is addressed in turn.

## I.     Sufficiency of Counts Four and Seven through Twelve

Defendant challenges the sufficiency of Counts Four and Seven through Twelve of the second superseding indictment under Federal Rule of Criminal Procedure 7(c), which requires a "plain, concise and definite written statement of the essential facts constituting the offense charged." These counts charge federal crimes that require proof of conduct that violates state law, federal law, or both. Defendant contends that the indictment does not sufficiently cite the state law that was violated or describe the underlying conduct. Finding merit to some of these claims, the Court grants in part and denies in part Defendant's motion to dismiss, without prejudice.

### A. **The Indictment**

The challenged portions of the indictment are as follows. Counts Seven through Twelve charge violations of three similar statutes: 18 U.S.C. §§ 2422 (in the indictment, "Interstate Prostitution"), 2421 ("Mann Act"), and 2423 ("Illicit Transportation of a Minor"). The Interstate Prostitution counts allege that Defendant induced "one or more individuals to travel in interstate commerce to engage in prostitution, and any sexual activity for which a person could be charged with a criminal offense." Counts 9, 12. The Mann Act and Illicit Transportation counts accuse Defendant of transporting two individuals (minors) with the intent that they engage "in prostitution, and any sexual activity for which a person could be charged with a criminal offense." Counts 7–8, 10–11. All of these counts essentially track the statutes, except the indictment substitutes

"prostitution *and* any sexual activity for which a person could be charged" for "prostitution *or* any sexual activity. . . ."

Count Four charges a violation of the Travel Act, 18 U.S.C. § 1952(a)(3)(A), (b)(i)(1), and accuses Defendant of using the Internet with intent to promote "an unlawful activity, to wit: a business enterprise involving prostitution, in violation of the laws of the State of New York."[1]

Defendant argues that in Counts Seven through Twelve, "sexual activity for which a person could be charged" is not defined and "incorporates a multitude of state and federal crimes." Def. Mem. at 14. He notes that the government's proof may include "evidence that the defendant himself had sexual relationships with Jane Doe #1 and Jane Doe # 2," and that he "cannot prepare to meet these charges without a clear statement as to whether he is being charged with transporting women for the purposes of prostitution or some other sex crimes." Id. at 15. At oral argument, Defendant added that there no reason to believe that the grand jury was presented with evidence of statutory rape. Oct. 24, 2015 Transcript ("Tr.") at 22. Defendant also contends that Count Four is too general because New York has several crimes concerning prostitution. Def. Mem. at 12–13.

The Government responds that Defendant's motion should be construed as a request for a bill of particulars, and that Defendant is not entitled to a bill of particulars (or dismissal). See Memorandum of Law in Response to the Defendant's Motions to Dismiss, Dkt. No. 44 ("Gov't Mem.") at 25. But the Government nevertheless discloses relevant state law: its brief states that all counts involve violation of New York Penal Law Articles 130 (sex offenses, which include forms of rape, statutory rape, sexual abuse, and

---

[1] See Appendix, infra, for the full language of the statutes and indictment.

sexual misconduct) and 230 (various degrees of prostitution, promoting prostitution, compelling prostitution, permitting prostitution, patronizing prostitutes, and sex trafficking). Id. at 27. Additionally, the brief states that Counts Seven through Nine involve Maryland Criminal Law Sections 3 (rape, statutory rape, and other sexual misconduct) and 11 (obscenity, indecent exposure, child pornography, and prostitution), and Pennsylvania Consolidated Statutes, Title 18, Chapters 30, 31 and 59 (human trafficking, sexual offenses, lewdness, obscenity, and prostitution and related offenses). Id. At oral argument, the Government confirmed that it is contemplating trial evidence of prostitution and statutory rape. Tr. at 19–20, 22. It has not addressed or been asked what was presented to the grand jury.

### B. **Legal Principles**

"Any discussion of the purpose served by a grand jury indictment in the administration of federal criminal law must begin with the Fifth and Sixth Amendments to the Constitution." United States v. Gonzalez, 686 F.3d 122, 126 (2d Cir. 2012) (quoting Russell v. United States, 369 U.S. 749, 760 (1962)). A grand jury indictment "performs three constitutionally required functions[:]

> It permits the accused to be informed of the nature and cause of the accusation as required by the Sixth Amendment. It prevents any person from being subject for the same offence to be twice put in jeopardy of life or limb as required by the Fifth Amendment. Finally, it preserves the protection given by the Fifth Amendment from being 'held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.'

United States v. Silverman, 430 F.2d 106, 110 (2d Cir. 1970) modified, 439 F.2d 1198 (2d Cir. 1970); see Gonzalez, 686 F.3d at 126; United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)). Rule 7(c)

protects these rights. <u>United States v. Walsh</u>, 194 F.3d 37, 44 (2d Cir. 1999); <u>Silverman</u>, 430 F.2d. at 106.

Typically, to fulfill their constitutional functions, indictments "need do little more than to track the language of the statute charged and state the [approximate] time and place . . . of the alleged crime." <u>United States v. Vilar</u>, 729 F.3d. 62, 80 (2d Cir. 2013) (quotation omitted). But indictments also must "contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." <u>Walsh</u>, 194 F.3d at 44.

When an indictment is sufficient, the Second Circuit "has 'repeatedly refused, in the absence of any showing of prejudice, to dismiss . . . charges for lack of specificity.'" <u>Stringer</u>, 730 F.3d at 124 (quoting <u>Walsh</u>, 194 F.3d at 45); <u>see</u> <u>United States v. Zolli</u>, 51 F.R.D. 522, 526 (E.D.N.Y. 1970) ("If the indictment fails to give the defendants information which they deem essential to the preparation of their defense, their remedy is a motion for a bill of particulars."). On the other hand, an indictment that is "defective for failure to [adequately] allege an essential element" is "not rescued by . . . a bill of particulars stating the element." <u>Gonzalez</u>, 686 F.3d at 127–28 (quotation and citation omitted) (dismissing drug-charge indictment for failing to specify the quantity of drug, an essential element of the crime); <u>see, e.g.</u>, <u>United States v. Awan</u>, 459 F. Supp. 2d 167, 175–76 (E.D.N.Y. 2006) <u>aff'd</u>, 384 F. App'x 9 (2d Cir. 2010) (Sifton, J.) (dismissing charge of a conspiracy to provide "material support or resources" to be used in a conspiracy to murder, kidnap, or maim a person outside the United States because the indictment did not specify the kind of "material support"); <u>United States v. Solovey</u>, 04-CR-244, 2005 WL 1279228, at *4 (W.D.N.Y. May 31, 2005).

The leading case regarding factual particularity is <u>Russell</u>, where the Supreme Court dismissed an indictment which (tracking the language of a statute) accused a defendant of refusing to answer a question pertinent to the "subject" of a congressional inquiry. 369 U.S. at 753–54. The Court found that pertinence to the subject under inquiry was "the very core of criminality"—and thus "central to every prosecution under the statute"—but often "difficult or impossible to ascertain" when not stated in the indictment. <u>Id.</u> at 759. The Court held that "[w]here guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." <u>Id.</u> at 764.

Subsequent cases clarified that <u>Russell</u> is limited to elements that are central to guilt; it does not impose a "broad requirement" that "all criminal . . . indictment[s] specify how each essential element is met." <u>Stringer</u>, 730 F.3d at 125–26; <u>see</u> <u>United States v. Resendiz-Ponce</u>, 549 U.S. 102, 108, 110 (2007) (upholding indictment charging attempted reentry at specific place and time even though it did not allege an overt act—an element of attempt—or underlying facts, because "attempt" implies an overt act and, with the time-and-place allegation, provided notice and a double jeopardy defense; unlike <u>Russell</u>, guilt did not depend "so crucially upon such a specific identification of fact").

Thus, in "certain statutes specification of how a particular element . . . will be met (as opposed to categorical recitation of the element) is of such importance to the fairness of the proceeding that it must be spelled out in the indictment." <u>Stringer</u>, 730 F.3d at 126 (citing <u>Russell</u>, 369 U.S. at 753; <u>Resendiz–Ponce</u>, 549 U.S. at 108; <u>Hamling</u>, 418 U.S. at 118) (but holding that indictments need not specify the identity of persons whose means of identification were used to perpetuate bank fraud). Moreover, when "one

element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense." United States v. Foley, 73 F.3d 484, 488 (2d Cir. 1996). And "where the definition of an offense . . . includes generic terms," such as fraud, "it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species, it must descend to particulars." United States v. Rosenblatt, 554 F.2d 36, 41 (2d Cir. 1977); see, e.g., Stringer, 730 F.3d at 126–27 (citations omitted) (noting past holdings that criminal falsity charges must "specific[y] what statements are alleged to be false, and in what respect they are false," and charges under controlled substances statute must state drug quantity). "In sum, for an indictment to fulfill the functions of notifying the defendant of the charges against him and of assuring that he is tried on the matters considered by the grand jury, the indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime." United States v. Pirro, 212 F.3d 86, 93 (2d Cir. 2000) (Gibson, J., sitting by designation, with Katzmann, J., concurring in judgment, and McLaughlin, J., dissenting).

Applying these principles, courts generally hold that "[i]f a statute makes it a crime to engage in certain conduct 'contrary to law,' it is not enough simply to cite that statute and recite in the pleading that the act was contrary to law—the pleading must show what other law was violated, either by citation to the other statute or by sufficient factual allegations." Charles Alan Wright, et. al., 1 Fed. Prac. & Proc. Crim. § 124 (4th ed. 2014); see, e.g., Keck v. United States, 172 U.S. 434, 437 (1899) (indictment charging defendant with importing diamonds "contrary to law" was deficient); United States v. Teh, 535 F.3d 511, 516 (6th Cir. 2008) ("[T]he words 'contrary to law' . . . do[] not fully

set forth the 'contrary to law' element."); <u>United States v. White</u>, 87 F. App'x 566, 572

(6th Cir. 2004) (indictment charging importation of firearm magazines "contrary to

law" must identify specific law because there are multiple possibilities, for example,

import bans and declaration requirements); <u>United States v. Miller</u>, 774 F.2d 883 (8th

Cir. 1985); <u>United States v. Alley</u>, 755 F. Supp. 771, 773 (N.D. Ill. 1990); <u>see also</u> <u>Pirro</u>,

212 F.3d at 93 ("[W]here an indictment charges a crime that depends in turn on

violation of another statute, the indictment must identify the underlying offense."); <u>cf.</u>

<u>Awan</u>, 459 F. Supp. 2d at 177 & n.10 (noting that indictment charging conspiracy to

provide "material support" to be used in a conspiracy to commit murder must allege

whether the underlying conspiracy was to commit first- or second-degree murder "or

provide sufficient facts so that the murder alleged can be identified").

Where, as here, a defendant "objects to the indictment before trial," the

defendant is "entitled to a more exacting review of the indictment than one who waits

until after trial to object." <u>United States v. Howard</u>, 400 F. Supp. 2d 457, 473 (N.D.N.Y.

2005) (quoting <u>Pirro</u>, 212 F.3d at 92).

**C.  <u>Analysis</u>**

Applying these principles, the Court finds that Counts Seven through Twelve—

which charge violations of 18 U.S.C. §§ 2241, 2242, and 2243—are partially deficient for

failing to allege a particular "sexual activity for which any person can be charged with a

criminal offense." <u>See</u> <u>United States v. Peel</u>, 2:14-CR-106, 2014 WL 3057523 (E.D. Cal.

July 7, 2014) (§§ 2422 and 2423 indictments must cite a specific statute or describe

particular sexual activity); <u>United States v. Lanzon</u>, 06-CR-20783, 2008 WL 3271092

(S.D. Fla. Aug. 8, 2008) (same, and the cited statute must specify one distinct crime).

<u>But see</u> <u>United States v. Powell</u>, 1 F. Supp. 2d 1419, 1420 (N.D. Ala. 1998) <u>aff'd</u>, 177 F.3d

982 (11th Cir. 1999) (tracking the statutory language is sufficient where defendant's argument for dismissal is stated in a conclusory manner); United States v. Miller, 102 F. Supp. 2d 946, 948–49 (N.D. Ill. 2000) (same, without explanation).[2] Those portions of the indictment are dismissed without prejudice. However, the rest of the indictment, including the portions of Counts Seven through Twelve charging prostitution-related offenses, are sufficient.

Because unlawful sexual activity is "the very core of criminality" and "central to every prosecution under" §§ 2241, 2242, and 2243—transporting or inducing a person to do nothing is not a crime—it must be stated with particularity. Russell, 369 U.S. at 759.

But "sexual activity" is a generic term that is "not defined by the statute." Peel, 2014 WL 3057523, at *3; see Lanzon, 2008 WL 3271092, at *1; see also United States v. Crowley, 79 F. Supp. 2d 138, 156 (E.D.N.Y. 1999) rev'd in part on other grounds, 236 F.3d 104 (2d Cir. 2000) (Seybert, J.) (holding that a sexual-abuse indictment must specify the sexual act underlying the charge because the statutory definition of "sexual act" contains several distinct acts). And that term is not narrowed by the phrase 'for which a person could be charged with a criminal offense,' which "encompasses a multitude of crimes." Peel, 2014 WL 3057523, at *3. A reference to numerous distinct offenses without a specific description of the underlying conduct "describes . . . a type of crime," not, as required, "a particular criminal act." Pirro, 212 F.3d at 93; see Teh, 535 F.3d at 516 (holding that an indictment charging a defendant with importing

---

[2] In the Southern District of New York, prosecutors defeated a similar challenge by filing a superseding indictment which cited specific statutes: New York Penal Law §§ 130.20(1) and (2) (nonconsensual sexual intercourse or other sexual conduct), 130.25(2) (statutory rape involving intercourse), 130.40(2) (statutory rape involving oral sexual conduct), 130.45(1) (same), and 130.60(2) (sexual abuse involving sexual contact with a 14-year old). See United States v. Schaefer, 07-CR-498, 2008 WL 2332369, at *1 (S.D.N.Y. June 2, 2008).

merchandise "contrary to law" was deficient even though it stated that the defendant imported counterfeit DVDs in violation of copyrights—the copyright and counterfeiting laws cover civil and criminal infringement, as well as the manufacturing and importation of copyrighted works, counterfeit labels, documentation and motion pictures, and "contain different elements against which a defendant would be required to defend"); Wright, 1 Fed. Prac. & Proc. Crim. § 124.

The constitutional concerns in this case are real and concrete. At oral argument, the Government stated that it may introduce evidence that Defendant himself engaged in sexual activity with Jane Doe #1 and Jane Doe #2—"statutory rape." Tr. at 17, 19.  But the indictment does not inform Defendant that he will have to defend against charges of statutory rape; indeed, the caption of Count Nine and Twelve—"Interstate Prostitution"—suggests that the "sexual activity" is limited to the victims' sex acts. Moreover, as the Government's disclosures confirm, unlawful sexual activity includes, in addition to statutory rape, many distinct acts. See, e.g., N.Y. Penal Law §§ 130.20–50 (forms of rape, sexual misconduct, and criminal sexual acts, including forced vaginal, oral, or anal intercourse); 130.52 (forcible touching of intimate  parts of another person for the purpose of abuse or arousal); 130.52 (persistent sexual abuse); 130.65–70 (degrees of sexual abuse, including "object" and digital penetration); 130.75–80 (course of sexual conduct against a child); § 130.91 (sexually motivated felony). Although the indictment describes sex trafficking, production and possession of child pornography, and prostitution-related offenses, it does not suggest that the grand jury was presented with evidence of sexual activity *in which Defendant personally engaged*, let alone specific acts.

Although a bill of particulars may cure a lack of notice and protect against double jeopardy, it would not ensure that evidence of statutory rape was presented to the grand jury. See Pirro, 212 F.3d at 92 ("If the indictment does not state the essential elements of the crime, the defendant cannot be assured that he is being tried on the evidence presented to the grand jury, or that the grand jury acted properly in indicting him."); Walsh, 194 F.3d at 44. Accordingly, the portions of Counts Seven through Twelve that refer to "any sexual activity for which a person could be charged with a criminal offense" are dismissed without prejudice. See Gonzalez, 686 F.3d at 127–28.

The portions of Counts Seven through Twelve alleging that Defendant induced Jane Doe #1 and Jane Doe #2 to engage in prostitution (and transported them with the intent that they engage in prostitution), however, are sufficient. Unlike "sexual activity," prostitution is a specific act. See, e.g., N.Y. Penal Law § 230.00 ("A person is guilty of prostitution when such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee."). Therefore, the indictment "give[s] a sufficient description of the activities forming the basis for" that portion of the charge. United States v. Gotti, 02-CR-606, 2003 WL 124148, at *3 (E.D.N.Y. Jan. 15, 2003) (Block, J.).

Similarly, Count Four, which charges Defendant with using the Internet to promote a business involving prostitution in violation of New York law, is sufficient. Defendant argues that New York law covers several prostitution-related activities. But the charge is limited to a *business* involving prostitution. Although New York law plausibly covers businesses that merely permit prostitution on their premises, see N.Y. Penal Law § 230.40, the indictment should be read "in its entirety" and construed in light of "common sense and reason." Gonzalez, 686 F.3d at 130; United States v. De La Pava, 268 F.3d 157, 162 (2d Cir. 2001). A common-sense reading of the indictment in its

entirety makes clear that Count Four charges Defendant with promoting a prostitution enterprise involving the prostitution of Jane Doe #1 and Jane Doe #2, among others.

The Court notes that if the Government chooses to reindict, Counts Seven through Twelve must contain more specific information than is disclosed in the Government's brief. For the reasons described above, a citation to broad portions of state penal codes covering several distinct offenses does not sufficiently allege a particular criminal act. See Lanzon, 2008 WL 3271092, at *1 (dismissing an 18 U.S.C. § 2422 indictment that cited Fla. Stat. § 800.04 because that statute "codifies multiple types of prohibited conduct within different subsections," including lewd and lascivious battery, molestation, conduct, and exhibition). Additionally, the Court acknowledges authority which suggests that an isolated citation to a statute is insufficient to allege an element of a crime. See Gonzalez, 686 F.3d at 126 (holding that a "reference to a drug-quantity based penalty provision . . . without any language alleging the factual predicate for application of that penalty, and without other allegations that reasonably permit the inference that the grand jury intended to charge the defendant with the quantity necessary for application of that penalty, is not a sufficient allegation of drug quantity"). As the Second Circuit held:

> [S]tating that an act is 'in violation of' a cited statutory section adds no factual information as to the act itself. *It declares the legal basis for claiming that the act is deserving of punishment, but does nothing to describe the act*; only words of the indictment give evidence of *whether the grand jury* considered and included with the offense charged the essential element. Stated another way, the mere citation of a statutory section is of scant help in deciding whether the grand jury considered the essential element. . . . We have no reason to believe that members of a grand jury, in determining what charges to bring, think in terms of statutory subsections rather than in terms of facts.

Id. at 129, 132 (quotations and citations omitted) (emphasis in original). As a general rule, "a lone statutory citation" sufficiently "charge[s] an element of a crime *only when* . . . the [content of the statute] could permissibly be inferred from a reading of *the indictment in its entirety*." Id. at 132 (quotations and citation omitted).

In conclusion, the portions of Counts Seven through Twelve that charge Defendant with inducing an individual to engage in "any sexual activity for which a person could be charged with a criminal offense" (or transporting an individual for that purpose) are deficient—they allege a broad category of crime, not a particular criminal act. Accordingly, those portions of the indictment are dismissed without prejudice.

## II. <u>Constitutionality of 18 U.S.C. § 1591</u>

Defendant argues that the statute charged in Counts One through Three, 18 U.S.C. § 1591, is overbroad and thus facially invalid.

18 U.S.C. § 1591, titled "Sex trafficking of children or by force, fraud, or coercion," as adapted, provides in relevant part:

> (a) Whoever knowingly –
>
> > (1) [R]ecruits, entices, harbors, transports, provides, obtains, or maintains by any means a person knowing or in reckless disregard of the fact that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, or
> >
> > (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)
>
> . . . shall be punished as provided in subsection (b).

Conceding that the statute does not affect *his* constitutional rights, Defendant invokes the First Amendment overbreadth doctrine, which allows litigants to "challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected rights or expression." Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973).

It is instructive to note that overbreadth challenges are facial, and that facial invalidation of a statute creates "substantial social costs," particularly where the statute has legitimate applications and primarily targets conduct rather than speech. Virginia v. Hicks, 539 U.S. 113, 119–20, (2003). To justify facial invalidation, "a law's application to protected speech" must be real and "substantial," both "in an absolute sense" and "relative to the scope of the law's plainly legitimate applications." Id. at 120; see Broadrick, 413 U.S. at 612. Given this standard, overbreadth challenges to statutes that primarily target conduct, rather than speech or conduct "necessarily associated with speech," "[r]arely, if ever," succeed. Hicks, 539 U.S. at 124.

The thrust of Defendant's argument is that the words "harbors, transports, . . . or maintains," if applied literally, would prohibit intimate and expressive associations that are protected by the First Amendment. His reading would have the statute apply to a wide range of social, familial, charitable, and other relationships. Parents, doctors, soup kitchens, and women's shelters, for example, could be branded as sex traffickers.

Defendant's reading of the statute, albeit creative, is not persuasive. It would suffice to reject it by quoting Justice Holmes's exquisitely pithy observation: "[T]here is no canon against using common sense in construing laws as saying what they obviously mean." Roschen v. Ward, 279 U.S. 337, 339 (1929).

The words around which Defendant's thesis is constructed—"transports," "harbors," and "maintains"—have narrower meaning than Defendant would ascribe. They and the words that surround them ("recruits, entices, . . . , provides, [and] obtains") are words with which the language of sex trafficking is instinct. They must be read in context, and in light of the statute's clear purpose, which is "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children." Victims of Trafficking and Violence Protection Act, P.L. 106-386 at § 102(1) (Oct. 28, 2000).

Chapter 77 of Title 18 is headed "Peonage, Slavery, and Trafficking in Persons." Positioning § 1591—itself titled "Sex trafficking of children or by force, fraud, or coercion"—within that Chapter signals that the statute was not intended to apply to the conventional social and charitable relationships that the defendant lists in his parade of hypothetical third parties who may be touched by the statute.

In passing the statute, Congress found that "[t]raffickers lure women and girls into their networks through false promises of decent working conditions . . . as nannies, maids, dancers, factory workers, restaurant workers, sales clerks or models" and "often transport victims from their home communities to unfamiliar destinations." P.L. 106-386 at § 102(4), (5). Common sense would understand the statute to aim at those targets—not at soup kitchens, women's shelters, and other benevolent persons and institutions. Indeed, Congress was concerned that victims were being lured "*away* from family and friends, religious institutions, and other sources of protection and support." § 102(5) (emphasis added). Although 18 U.S.C. § 1591 was poorly drawn, its intent is perfectly clear. Defendant's reading of the statute is not only incompatible with its purpose, but would result in such "absurdity and injustice . . . that all mankind would,

without hesitation, unite in rejecting the application." <u>Sturges v. Crowninshield</u>, 17 U.S. 122, 203 (1819) (Marshall, C.J.); <u>see</u> <u>Public Citizen v. Department of Justice</u>, 491 U.S. 440, 454 (1989); <u>United States v. Kirby</u>, 74 U.S. (7 Wall) 482, 487 (1868).

Uniquely apt to this exercise in statutory construction is an infrequently cited felicitous reflection by Judge Learned Hand in <u>United States v. Franklin</u>:

> I do not in the least mean to reflect upon the wisdom of counsel who filed [this motion]. . . . Nevertheless, I cannot resist saying that to adopt the construction which is suggested would, in my judgment, be to pervert the obvious meaning of the act quite unpardonably, and that, too, by a metaphysic which is fatuously verbal and naively nonsensical.

174 F. 163, 164 (Cir. Ct. S.D.N.Y. 1909).

The statute's overbreadth is hypothetical, insubstantial, and unrealistic. The statute is facially valid.

## III.  <u>Sufficiency of Scienter Allegations in Counts One through Three</u>

Count One charges sex trafficking of a minor under the age of 14, and Counts Two and Three charge sex trafficking of a minor between the ages of 14 and 18, all in violation of 18 U.S.C. § 1591. Dkt. 35. Defendant argues that these charges do not adequately allege scienter. <u>See</u> Def. Supp., Dkt. No. 41.

This claim can be dismissed by a reading of the statute, which begins "(a) Whoever <u>knowingly</u> . . . recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person . . . <u>knowing</u> . . . [or] in <u>reckless disregard</u> of the fact . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)." 18 U.S.C. § 1591(a)(1) (emphasis added). Subsection (b) provides in part that the "punishment for an offense under subsection (a)," if the offense was committed by fraud, force, or coercion, or if the victim "had not attained the age of 14 years at the time of such

offense," shall be no less than 15 years of imprisonment. § 1591(b)(1). It further provides that "if the victim "had attained the age of 14 years but had not attained the age of 18 years," the punishment shall be no less than 10 years of imprisonment. § 1591(b)(2). Additionally, subsection (c) of the statute provides that when "the defendant had a reasonable opportunity to observe" the victim, "the Government need not prove that the defendant knew" that the victim had not attained the age of 18. § 1591(c).

A defendant would be punished for violating this statute if the Government were to prove beyond a reasonable doubt that he knew or recklessly disregarded the fact that the victim was of *any* age under 18 (or that he had an opportunity to observe the victim). His punishment, however, would be enhanced under subsection (b) if the Government were to prove beyond a reasonable doubt that the crime was committed by force, fraud, or coercion, or that the victim had not attained the age of 14. In such case, there is no additional requirement that the Government prove that the defendant *knew* that the victim had not attained the age of 14.[3]

Turning to the indictment, Counts One, Two, and Three are clearly sufficient. They allege that Defendant acted "knowing, and in reckless disregard of the fact, that . . . Jane Doe #1 [and Jane Doe #2] had not attained the age of 18." Dkt. 35. That is all that is required. <u>United States v. Robinson</u>, 702 F.3d 22, 34 (2d Cir. 2012) (holding that

---

[3] This is not unusual; Congress has mandated an enhanced punishment based on proof of an attendant circumstance before. For example, the controlled substances statute, 21 U.S.C. § 841, subsection (a) prohibits, among other things, the knowing or intentional distribution of drugs, and in subsection (b) provides for penalties based on the drug type and quantity. But it does not require proof that the defendant *knew* the drug type or quantity. <u>See</u> <u>United States v. Andino</u>, 627 F.3d 41, 47 (2d Cir. 2010) ("[O]ur cases accord with the rule that the government need not prove *scienter* as to drug *type* or *quantity* when a defendant personally and directly participates in a drug transaction underlying a conspiracy charge.") (emphasis in original). Indeed, 18 U.S.C. §1591(b)'s imposition of an additional penalty based on proof that the victim had not attained the age of 14 is consistent with the general treatment of sex crimes against minors.

"under § 1591, the government may satisfy its burden of proof with respect to the defendant's awareness of the victim's age by proving . . . : (1) the defendant knew that the victim was under eighteen, (2) the defendant recklessly disregarded the fact that the victim was under eighteen, *or* (3) the defendant had a reasonable opportunity to observe the victim") (emphasis added).

This motion is denied as to Counts One through Three.

**IV.**     <u>**Bill of Particulars**</u>

Defendant moved for a bill of particulars as to Counts Nine and Twelve (interstate prostitution), which do not identify the victims. Def. Mem. at 15. The Government, in response, identified ten victims "potentially associated with the crimes charged in Counts Nine and Twelve." Gov't Mem. at 25. Accordingly, the Defendant's motion for a bill of particulars is moot.

**V.**     <u>**Surplusage**</u>

Defendant moves to strike from the indictment references to two of his aliases: "Love Pimpin" and "Legit Pimp." Def. Mem. at 16. The Government agrees to strike "Legit Pimp" but not "Love Pimpin." Gov't Mem. at 30.

Rule 7(d) of the Federal Rules of Criminal Procedure provides that "the court may strike surplusage from the indictment." A motion to strike surplusage will be granted only when the movant demonstrates that the challenged terms are: (1) irrelevant to the crime charged; and (2) inflammatory and prejudicial. <u>United States v. Mulder</u>, 273 F.3d 91, 99 (2d Cir. 2001), <u>cert. denied</u>, 535 U.S. 949 (2002). In light of this exacting standard, "if evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." <u>United States v. Scarpa</u>, 913 F.2d 993, 1013 (2d Cir. 1990) (citation and quotation omitted).

Defendant argues that "Love Pimpin" should be stricken because it is prejudicial and, in light of other evidence, will not be necessary to prove Defendant's identity or his self-identification as a pimp. But the challenged language need only be relevant, not necessary, in light of evidence that will be presented at trial. See Mulder, 273 F.3d at 99. Thus, aliases will not be stricken "when evidence regarding those aliases . . . will be presented to the jury," for example, as evidence of the crime or to assist the jury in identifying a defendant. United States v. Elson, 968 F. Supp. 900, 909 (S.D.N.Y. 1997); see United States v. Butler, 351 F. Supp. 2d 121, 125 (S.D.N.Y. 2004); United States v. Murgas, 967 F. Supp. 695, 710 (N.D.N.Y. 1997).

The Government argues that "Love Pimpin" is not only relevant, but "integral to the crimes charged." Gov't Mem. at 28. It represents that the alias "is itself evidence of the crimes charged—that the defendant is a pimp who runs a prostitution business." Id. at 28–29. It further represents that the alias is "necessary to understand evidence" such as Facebook posts in which Defendant describes illicit activities while referring to "L.P." (short for "Love Pimpin") or "Team L.P.," a phrase he used to describe his group of prostitutes. Id. at 29. The Government also claims that "Love Pimpin" was Defendant's brand, that a victim has a "Love Pimpin" tattoo, and that the brand helps "define the nature of the relationship between the defendant and the minor victims." Id. at 29–30. In light of these representations, "Love Pimpin" should not be stricken from the indictment.

**CONCLUSION**

Defendant's motion to dismiss is GRANTED in part and DENIED in part: the portions of Counts Seven through Twelve that refer to "any sexual activity for which a person could be charged with a criminal offense" are dismissed without prejudice. Defendant's motion for a bill of particulars is DENIED as moot. Defendant's motion to strike surplusage is GRANTED in part and DENIED in part: references to "Legit Pimp" should be removed from the indictment and case caption.

SO ORDERED.


Dated:     Brooklyn, New York
           October 28, 2015
                                    _____/s/_____
                                    I. Leo Glasser
                                    Senior United States District Judge

# Appendix

## Travel Act

Statute: "Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate commerce, with intent to . . . promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity," which includes "any business enterprise involving . . . prostitution offenses in violation of the laws of the State in which they are committed or of the United States," and "thereafter performs . . . [such act] shall be" fined or imprisoned up to 5 years, or both. 18 U.S.C. § 1952(a)(3)(A), (b)(i)(1).

Count 4: "In or about and between April 2013 and January 2015 . . . [Defendant] did knowingly and internationally use . . . the Internet, with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit: a business enterprise involving prostitution, in violation of the laws of the State of New York. . . ."

## Illicit Transportation of a Minor

Statute: "A person who knowingly transports an individual who has not attained the age of 18 years in interstate . . . commerce . . . with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life." 18 U.S.C. § 2423(a).

Count 7: "In or about and between August 2014 and September 2014 . . . [Defendant] did knowingly and intentionally transport one or more individuals who had not attained the age of 18 years, to wit: Jane Doe #1 and Jane Doe #2, in interstate commerce with intent that such individuals engage in prostitution, and any sexual activity for which a person could be charged with a criminal offense."

Count 10: "In or about November 2014, . . . the defendant . . . did knowingly and intentionally transport an individual who had not attained the age of 18 years, to wit: Jane Doe #2, in interstate commerce with intent that such individual engage in prostitution, and any sexual activity for which a person could be charged with a criminal offense."

## Mann Act

Statute: "Whoever knowingly transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both." 18 U.S.C. § 2421(a).

Count 8: "In or about and between August 2014 and September 2014 . . . [Defendant] did knowingly and intentionally transport one or more individuals, to wit: Jane Doe #1 and Jane Doe #2, in interstate commerce with intent that such individuals engage in prostitution, and in any sexual activity for which a person could be charged with a criminal offense."

Count 11: "In or about November 2014 . . . the defendant . . . did knowingly and intentionally transport an individual, to wit: Jane Doe #2, in interstate commerce with intent that such individual engage in prostitution, and any sexual activity for which a person could be charged with a criminal offense."

## Interstate Prostitution

Statute: "Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 2422(a).

Count 9: "In or about and between August 2014 and September 2014 . . . [Defendant] did knowingly and intentionally persuade, induce, entice and coerce one or more individuals to travel in interstate commerce to engage in prostitution, and any sexual activity for which a person could be charged with a criminal offense."

Count 12: "In or about November 2014, . . . [Defendant] did knowingly and intentionally persuade, induce, entice and coerce one or more individuals to travel in interstate commerce to engage in prostitution, and any sexual activity for which a person could be charged with a criminal offense."